LAURENCE F. PULGRAM (CSB NO. 115163)
lpulgram@fenwick.com
JEDEDIAH WAKEFIELD (CSB NO. 178058)
jwakefield@fenwick.com
CLIFFORD C. WEBB (CSB NO. 260885)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendant
GROUPON, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO COMPREHENSIVE TOURS, LLC dba SAN FRANCISCO SHUTTLE TOURS and WINE COUNTRY TOUR SHUTTLE, on behalf of itself and all others similarly situated, | Case No. CV 11-01300-PJH |
| | **MOTION TO DISMISS OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| Plaintiffs, | |
| v. | Date: August 24, 2011 |
| | Time: 9:00 a.m. |
| GROUPON, INCORPORATED and DOES 1-20, inclusive, | Dept: Courtroom 3 |
| | Judge: Hon. Phyllis J. Hamilton |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 3

      A.      Groupon's Deal-of-the-Day Services and Website ................................. 3

      B.      Groupon's Internet Advertising ................................................................. 4

      C.      Plaintiff's Tour Services, Advertising, and Allegations ........................ 5

ARGUMENT ................................................................................................................................... 6

I.      DISMISSAL OF CLAIMS AND THEORIES IS APPROPRIATE WHERE
       THEY HAVE NO BASIS IN LAW OR FACT ............................................................ 6

II.     GROUPON'S PURCHASE OF KEYWORDS IS ENTIRELY LAWFUL; NO
       CAUSE OF ACTION CAN BE PREMISED ON IT AND NO REMEDY CAN
       BAR IT ................................................................................................................................. 8

III.    PLAINTIFF'S CLASS ALLEGATIONS ARE NOT COGNIZABLE AND
       SHOULD BE STRUCK ..................................................................................................... 12

IV.    THE FAC FAILS TO STATE A CLAIM FOR INTENTIONAL
       INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE .................. 14

V.     THE COURT SHOULD DISMISS OR STRIKE PLAINTIFF'S REQUEST
       FOR DISGORGEMENT OF PROFITS UNDER SECTION 17200 .............................. 16

CONCLUSION ............................................................................................................................... 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASES

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
Case No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180
(S.D. Cal. Apr. 28, 2011) ........................................................................... 7, 12

*Ariannejad v. JPMorgan Chase Bank, N.A.,*
No. 09-1971, 2009 U.S. Dist. LEXIS 107357
(S.D. Cal. Nov. 17, 2009) .................................................................................. 9

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ...................................................................................... 7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................... 6, 7

*Blank v. Kirwan,*
39 Cal. 3d 311 (Cal. 1985) .............................................................................. 14

*Bran v. Sun Pacific Farming Cooperative,*
No. 06-871, 2007 U.S. Dist. LEXIS 19235
(E.D. Cal. Mar. 1, 2007) .................................................................................. 18

*Brothers v. Hewlett-Packard Co.,*
No. 06-2254, 2006 U.S. Dist. LEXIS 82027
(N.D. Cal. Oct. 31, 2006) ................................................................................ 16

*Burch v. GMAC Mortgage, LLC,*
No. C-09-4214, 2010 U.S. Dist. LEXIS 23659
(N.D. Cal. Mar. 15, 2010) .......................................................................... 7, 12

*Bureerong v. Uvawas,*
922 F. Supp. 1450 (C.D. Cal. 1996) ............................................................ 8, 12

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
141 F.R.D. 144 (N.D. Cal. 1991) ................................................................... 13

*Cahill v. Liberty Mutual Ins. Co.,*
80 F.3d 336 (9th Cir. 1996) .............................................................................. 6

*Camplaie v. BAC Home Loans Servicing, LP,*
706 F. Supp. 2d 1029 (E.D. Cal. 2009) ....................................................... 7, 12

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.,*
479 F.3d 1099 (9th Cir. 2006) ........................................................................ 14

*Daly v. United Healthcare Ins. Co.,*
Civ. Case No. 10-CV-03032, 2010 WL 4510911
(N.D. Cal. Nov. 1, 2010) .................................................................................. 7

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) .......................................................................................... 7

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Fortaleza v. PNC Financial Servs. Group, Inc.*,
  642 F. Supp. 2d 1012 (N.D. Cal. 2009) ...................................................... 9

*FTC v. Cantkier*,
  No. 09-894, 2011 WL 742647 (D. DC Mar. 3, 2011) ...................................... 2, 10

*Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
  No. 03-5340, 2005 U.S. Dist. LEXIS 6228
  (N.D. Cal. Mar. 30, 2005) .......................................................................... 15, 16

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ...................................................................... 13

*Henderson v. Gruma Corp.*,
  No. 10-4173, 2011 U.S. Dist. LEXIS 41077
  (C.D. Cal. Apr. 11, 2011) ........................................................................... 17, 18

*Henry v. Lehman Commercial Paper, Inc.*,
  471 F.3d 977 (9th Cir. 2006) ...................................................................... 17

*In re SRAM Antitrust Litig.*,
  580 F. Supp. 2d 896 (N.D. Cal. 2008) ........................................................ 6

*Johnson v. GMRI, Inc.*,
  No. 07-283, 2007 U.S. Dist. LEXIS 40176
  (E.D. Cal. May 21, 2007) ............................................................................ 7, 12

*Konik v. Time Warner Cable*,
  No. 07-763, 2010 U.S. Dist. LEXIS 136923
  (C.D. Cal. Nov. 24, 2010) .......................................................................... 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (Cal. 2003) ...................................................................... 14, 16, 17

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) ................................................................................... 11

*Madrid v. Perot Systems Corp.*,
  130 Cal. App. 4th 440 (Cal. Ct. App. 2005) ............................................... 16, 17

*Martinez v. The Welk Group, Inc.*,
  No. 09-2883, 2011 U.S. Dist LEXIS 58718
  (S.D. Cal. June 2, 2011) ............................................................................. 18

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ...................................................................... 7

*National Rural Telecommunications Co-Op v. DirectTV, Inc.*,
  319 F. Supp. 2d 1059 (C.D. Cal. 2003) ...................................................... 18

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) .................................................................... 3

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Peel v. Attorney Registration & Disciplinary Commission*,
496 U.S. 91 (1990) ........................................................................................... 11

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................ 13

*Shapero v. Kentucky Bar Association*,
486 U.S. 466 (1988) ......................................................................................... 11

*Swingless Golf Club Corp. v. Taylor*,
No. 08-5574, 2009 U.S. Dist. LEXIS 57654 (N.D. Cal. July 7, 2009).................. 15

*United States v. Bari*,
599 F.3d 176 (2d Cir. 2010)................................................................................. 4

*United Transportation Union v. State Bar of Michigan*,
401 U.S. 576 (1971) ......................................................................................... 12

*Vinole v. Yoder*,
571 F.3d 935 (9th Cir. 2009)............................................................................. 13

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*,
425 U.S. 748 (1976) ......................................................................................... 11

*Westside Center Associates v. Safeway Stores 23, Inc.*,
42 Cal. App. 4th 507 (Cal. Ct. App. 1996) ........................................................ 15

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010)................................................................. 7, 12, 18

**STATUTES**

15 U.S.C. § 1125(a)(1) .................................................................................... 6, 8

Cal. Bus. & Prof. Code § 17200 .................................................................. *passim*

Cal. Bus. & Prof. Code § 17500 ................................................................... 6, 8, 9

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................. 9

Fed. R. Civ. P. 12 ............................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................ 6, 7, 16

Fed. R. Civ. P. 12(f) ........................................................................................... 7

Fed. R. Civ. P. 23(a)(2)-(3) ............................................................................... 13

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF SAN FRANCISCO COMPREHENSIVE TOURS, LLC AND ITS ATTORNEY OF RECORD:

NOTICE IS HEREBY GIVEN that on Wednesday, August 24, 2011 at 9:00 A.M., or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California (Oakland Division), located at 1301 Clay Street, Oakland, California, in the courtroom of the Honorable Phyllis J. Hamilton, Courtroom 3, Defendant Groupon, Inc. ("Groupon") will and hereby does move the Court for an order dismissing Plaintiff's First, Second, and Third Causes of Action to the extent that they allege that Groupon's purchase of keywords is actionable; dismissing or striking Plaintiff's request for an injunction barring Groupon's purchase of certain keywords; striking Plaintiff's class allegations; dismissing Plaintiff's Fourth Cause of Action due to its failure to allege any cognizable economic relationship interfered with; and dismissing or striking Plaintiff's request for non-restitutionary disgorgement of profits under California Business and Professions Code § 17200. This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the pleadings and other papers on file in this action, and any other oral or written submissions as the Court may entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff San Francisco Comprehensive Tours, LLC ("Plaintiff" or "SFCT") complains of increasing competition in its purchases of advertising. Specifically, it complains that its costs to obtain advertising exposure has increased after Defendant Groupon, Inc. ("Groupon") and others began bidding in Google's auction of keywords that Plaintiff previously was able to purchase with less competition. Groupon is well known for its "deal-a-day" discount coupon offerings. Groupon proposes to members a different deal every day in localities around the world. Its deals on any given day may include discounts on everything from restaurants to clothing to consumer goods or services, including deals on tours and attractions. Groupon advertises, among other means, by purchasing keyword advertising on Google's AdWords platform. If Groupon—or

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Plaintiff—bids more for a keyword (*e.g.*, "tours"), there is a greater chance that its paid

2    advertising will be displayed ahead of others when the purchased word is searched by a Google

3    user.

4         Plaintiff's First Amended Complaint attacks Groupon's competition for consumer

5    attention under two distinct theories—neither of which has merit.   First, Plaintiff challenges the

6    purchases of keywords themselves.   Plaintiff claims that on days when Groupon is not offering a

7    discount tour, it is unlawful for Groupon to purchase the keyword "tours" and thereby to reach the

8    public searching for that term—regardless of the content of the ad Groupon displays.  In essence,

9    Plaintiff challenges the basic framework of much of modern advertising, suggesting that a vendor

10   cannot target its advertisements at specific groups of consumers who initially expressed an

11   interest in a different product.  It is akin to suggesting that Coca-Cola could not purchase

12   keywords for "iced tea" for the simple reason that Coke is not iced tea, and because its purchase

13   of the term would drive up the costs of ads for iced tea vendors.  By the same logic, a seller of

14   luxury watches could not purchase ads in a luxury car magazine because it would drive up the

15   cost of ads for car vendors.  To the contrary, the mere purchase of a keyword, like any other

16   purchase of advertising space, is not a representation of any fact.  One wishing to communicate to

17   tourists has the clear and indisputable right to buy the term "tour" to do so.

18        Not surprisingly, the only court to have addressed Plaintiff's first theory has already

19   squarely rejected it. *FTC v. Cantkier*, No. 09-894, 2011 WL 742647 (D. DC Mar. 3, 2011).

20   Plaintiff's complaint cannot proceed on this theory, and it should be dismissed or stricken.

21   Likewise, because this attack on keyword purchases is unsustainable, it is inconceivable that a

22   class action could be maintained in this case, and the class action allegations therefore should be

23   stricken.

24        Plaintiff's second theory turns not on the purchase of keywords but on the allegation that

25   the text and content of particular ads displayed by Groupon is misleading.   Plaintiff contends that

26   consumers who click on a Groupon *ad containing* the word "tour" or "Muir Woods" or "Napa"

27   rather than on Plaintiff's neighboring ad with similar terms, may not find a tour on Groupon's site

28   (as Groupon's deals change every day), and therefore may be "misled."   This theory ignores the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

fact that Internet users know that Groupon's deals change every day.  It also ignores the fact that any user who does *not* find what she is looking for at Groupon need merely click the "back" button to look at other search results.  It also ignores the Ninth Circuit's developing case law that confusion among websites must be judged by the consumer's reaction to the website, not just a few lines of text in a hypertext link.  *See Network Automation, Inc. v. Advanced Systems Concepts*, *Inc.*, 638 F.3d 1137 (9th Cir. 2011).  But as relevant for the purposes of this motion, this theory also ignores the legal standard that no claim can be stated for intentional interference with prospective economic advantage absent an allegation of a particular, continuing economic relationship with the proposed consumer.  As a matter of law, Plaintiff's mere hope that an unidentified Internet surfer might purchase a tour from Plaintiff in the absence of an ad by Groupon is not a sufficient "economic relationship" to state a cause of action for interference.

Likewise, Plaintiff's "misleading content" theory cannot support the remedies Plaintiff has sought in its unfair competition claim, which purports to recover "any and all profits" that Groupon has made as a result of its challenged advertising practices.  It is established beyond question that only restitutionary remedies are available under California's Unfair Competition Law (UCL), Business & Professions Code §17200.  Plaintiff has not paid Defendant any "money or property" that is subject to restitution, requiring dismissal of its claim to the extent it seeks such remedies.

## FACTUAL BACKGROUND

### A.      Groupon's Deal-of-the-Day Services and Website

As recognized by Plaintiff's First Amended Complaint, Defendant Groupon is the leading provider of online deal-of-the-day services through its website at www.groupon.com.  *See* First Amended Complaint, Dkt. No. 11 ("FAC") ¶ 6.  Groupon's service works by offering its users one featured daily deal along with several other less prominent deals in a given city of their choosing every day through its website and via e-mail.  *Id.*; *see also* http://www.groupon.com/learn, last visited June 16, 2011.  Beginning in 2008, Groupon began offering its daily deals on all manner of local activities in Chicago, quickly expanding to numerous cities across the United States and around the world, including several Bay Area

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

locations such as San Francisco, the East Bay, and Napa and Sonoma.

As a deal-of-the-day service, as Plaintiff acknowledges, Groupon's deals generally change every day. FAC ¶ 6. Consumers, no differently than Plaintiff's, recognize and understand this aspect of Groupon's business, checking in each day to see what Groupon's featured deal will be. Groupon generally offers its user significant discounts on varied types of local activities, generally at or above 50% off. *Id.* ¶ 26; *see also* http://www.groupon.com/learn, last visited June 16, 2011. Within the San Francisco Bay Area, and more generally, Groupon has offered daily deals on many different types of activities including San Francisco tours, wine country tours, Marin county tours, dining out, physical fitness and massage, and numerous varieties of retail offers. *See* Declaration of Clifford Webb in Support of Defendant's Motion to Dismiss or Strike ("Webb Decl.") Exhs. A-J.[1]

### B. Groupon's Internet Advertising

In support of its deal-of-the-day offerings, Groupon engages in various forms of advertising online, and via other traditional forms of media. One such form of advertising, brought into issue by Plaintiff's allegations, is Groupon's keyword advertising including its purchase of keywords through Google's AdWords program. Like virtually all companies that advertise on the Internet, Groupon purchases keyword advertising from Google through its AdWords program. As alleged in Plaintiff's Complaint, Google's program operates by allowing advertisers to purchase certain "keywords" as triggers for displaying a company's advertisements when a Google user searches for that keyword. *See* FAC ¶¶ 15-22.[2] Following the purchase of one of these keywords, when a Google user searches for the keyword, the advertiser's

---

[1] The actual deals that Groupon has offered in the Bay Area and their import for the merits of Plaintiff's claims of deceptive advertising is not the focus of this motion. These examples are submitted for the purpose of demonstrating to the Court the nature of the services offered by Groupon, as relevant to the motion to strike, including to demonstrate the completely disparate nature of individual deals offered by Groupon. As materials capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, they are subject to judicial notice. *See, e.g., United States v. Bari,* 599 F.3d 176, 180 (2d Cir. 2010) (holding that it was appropriate for the court, *sua sponte,* to take judicial notice of the availability of certain products, and confirming this fact through independent Internet searches).

[2] Groupon does not admit in any way that Plaintiff's characterization of the Google AdWords program is accurate or complete. As with all allegations of fact in the Amended Complaint, they are assumed true for the purposes of this motion even if disputed for this action.

independently created ad will appear in a ranked order among other purchased advertisements, with top ranked advertisements appearing higher on the page than lower ranked advertisements. *Id.* These advertisements appear in addition to the "organic" informational search results generated by Google's Search Engine, both above and to the right of the organic results in a separate, designated "ads" section. *Id.* Google uses its own proprietary and secret algorithm to determine the exact ranking and placement of advertisements in its ads section. *Id.* ¶ 21. As Plaintiff acknowledges, the price bid by the advertiser for a given keyword is one of many factors taken into account—a party desiring to pay more for a particular word has a better chance of a higher ranking. *Id.*

### C. Plaintiff's Tour Services, Advertising, and Allegations

According to the FAC, Plaintiff operates a local tour company in the San Francisco Bay Area, offering tours of San Francisco, Marin, and the Northern California Wine Country. *Id.* ¶ 5. Much as with Groupon, and most other Internet advertisers, Plaintiff alleges that it purchases keyword advertising from Google and other popular search engines to promote its business, including keywords like "San Francisco Tours," "Alcatraz Tours," and "Napa Wine Tours." *Id.* ¶¶ 5; 24.

Plaintiff alleges generally that Groupon's mere purchase of keywords such as "San Francisco tours," "Alcatraz tours," "Napa Wine tours," and "Muir Woods tours" through Google's AdWords program on days when it does not offer these deals constitutes false or misleading advertising. *See, e.g., id.* ¶¶ 44-45. Plaintiff claims that the price it had to pay for ads "skyrocketed" when Groupon began purchasing keywords. *Id.* ¶ 25. It seeks an injunction prohibiting Groupon from buying such keywords. *Id.* ¶ C.

Additionally and separately, Plaintiff alleges that Groupon's actual advertisements contain false and misleading statements regarding the deals if that content uses the word "tours" on days when no tour is actually available. *See, e.g., id.* ¶ 47. Thus, for example Plaintiff objects to an ad being served in response to the search term "SF Tours" where a lead of "SF Tours" is followed by the explanation "1 ridiculously huge coupon per day. Deals like San Fran Tours & More!" *Id.* ¶ 29. Plaintiff generally alleges that because of this content, and the purchase of keywords, these

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

actions have caused it to increase its advertising spend and have diverted potential customers of Plaintiff who click on Groupon's ads instead of Plaintiff's. *Id.* ¶¶ 38, 40.

Plaintiff filed its first Complaint in this action on March 17, 2011 asserting these theories and alleging that Groupon's online keyword advertising and keyword purchasing violates the Lanham Act, Sections 17200 and 17500 of the California Business and Professions Code, and constitutes intentional interference with prospective economic advantage. *See* Dkt. No. 1 ("Complaint"). A month later, on April 19, 2011, Plaintiff filed its First Amended Complaint making the same allegations, but now as a purported class action on behalf of "[a]ll person and entities in the United States who purchased internet ads with Google for the purpose of advertising local tour company business and information" and whose "businesses, including the cost of advertising on Google, have been affected by the false advertisements of Groupon." FAC ¶ 7. How one might determine who such "local tour companies" are, how they may have been "affected," including by which keyword buys or which ad content in different locations, the FAC does not explain.

## **ARGUMENT**

### **I.    DISMISSAL OF CLAIMS AND THEORIES IS APPROPRIATE WHERE THEY HAVE NO BASIS IN LAW OR FACT**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal is appropriate under Rule 12(b)(6) where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 900 (N.D. Cal. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id* at 555  Instead, the allegations "must be enough to raise a right to relief above the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

speculative level." *Id.* (internal citations omitted). In other words, the complaint must set forth enough facts to state a claim that is "plausible on its face," that is, "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 570, 572; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). These pleading standards prevent a plaintiff with "a largely groundless claim" from being allowed to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (citation omitted). Where one of multiple theories pled in support of a cause of action is deficient, courts should dismiss or strike those deficient theories separately, even where an alternately pled theory is legally viable. *See, e.g., Architectural Mailboxes, LLC v. Epoch Design, LLC,* Case No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180, at *18 (S.D. Cal. Apr. 28, 2011) (dismissing Lanham Act unfair competition claim to the extent to relied upon an alternate and deficient false designation of origin theory while allowing this same claim to go forward on a false advertising theory); *Burch v. GMAC Mortgage, LLC*, No. C-09-4214, 2010 U.S. Dist. LEXIS 23659, at *5 n.1 (N.D. Cal. Mar. 15, 2010) (dismissing Truth in Lending Act claim to the extent it relied upon a deficient failure to deliver theory while allowing this same claim to go forward on a second alternate theory); *Camplaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1055 (E.D. Cal. 2009) (granting motion to dismiss as to certain specific theories plead in support of a cause of action).

Likewise, where a claim seeks remedies that are precluded as a matter of law, the court should dismiss those claims to the extent that they seek such illegitimate remedies under Fed. R. Civ. P. 12(b)(6). *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010); *see also, Daly v. United Healthcare Ins. Co.*, Civ. Case No. 10-CV-03032, 2010 WL 4510911, at *7-8 (N.D. Cal. Nov. 1, 2010) (following *Whittlestone* and dismissing claim for attorneys' fees based on the pleadings under Rule 12(b)(6) rather than Rule 12(f)). Alternatively, earlier decisions have also applied Rule 12(f) to strike claims for remedies that were unavailable as a matter of law. *See*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Johnson v. GMRI, Inc.*, No. 07-283, 2007 U.S. Dist. LEXIS 40176, at \*24-\*25 (E.D. Cal. May 21, 2007) (striking as immaterial and impertinent prayer for damages unavailable as a matter of law, including disgorgement of profits under Cal. Bus. & Prof. Code § 17200); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996) (a motion to strike under Rule 12 "may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law.")

## II. GROUPON'S PURCHASE OF KEYWORDS IS ENTIRELY LAWFUL; NO CAUSE OF ACTION CAN BE PREMISED ON IT AND NO REMEDY CAN BAR IT

Each of Plaintiff's three causes of action for false advertising and unfair competition are premised at least in part on its legally deficient first theory—*i.e.*, that a purchase of keywords is actionable if the purchaser does not actually offer for sale the word purchased on that particular day—regardless of the content of the actual ads posted in connection with that keyword. *See* FAC ¶ 44 (under the Lanham Act); ¶ 58 (under section 17500); ¶ 67 (under section 17500). Plaintiff alleges that "Groupon's business practice of using keywords constituting goods or services which it does not offer . . . constitute[s] misrepresentations of the nature, characteristics, and qualities of its services and the commercial activities of its coupon advertisers." *Id.* ¶ 44 (Lanham Act, incorporated by reference into subsequent causes of action). Further, Plaintiff's prayer for relief specifically seeks an injunction barring Groupon "from using AdWords . . . and keywords . . . that represent a good or a service that Groupon and its advertisers are not in fact offering to users and consumers at the time of the search." *Id.* ¶ C.

Plaintiff's allegations and requested injunction fail the fundamental requirement of alleging a false or misleading statement, a required element of each of Plaintiff's first three causes of action. Specifically, a claim under the Section 43(a) of the Lanham Act, as acknowledged by Plaintiff's complaint, requires that an advertisement contains a false or misleading representation or description of fact. *See* 15 U.S.C. § 1125(a)(1); FAC ¶ 42 (recognizing and reciting this requirement). Likewise a claim for false advertising under either California Business & Professions Code §§ 17200 or 17500 also requires an untrue or misleading statement of fact concerning the services to be provided. *See* Cal. Bus. & Prof. Code § 17500 (prohibiting "any

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

statement" concerning the services to be provided that is untrue or misleading); § 17200 (incorporating violations of § 17500 for false advertising under § 17200). This much is again acknowledged by Plaintiff's own complaint. *See* FAC ¶ 51 (acknowledging the requirement of an untrue of misleading statement of fact under Section 17500); ¶ 61 (acknowledging that false advertising under Section 17200 requires an untrue or misleading statement of fact). Moreover, as causes of action sounding in fraud, these misstatements must be plead with particularity under Rule 9(b), and courts routinely dismiss claims that fail to do so. *See, e.g., Fortaleza v. PNC Financial Servs. Group, Inc.*, 642 F. Supp. 2d 1012, 1020 (N.D. Cal. 2009) (dismissing claims under § 17200 where the plaintiff failed to plead the allegedly fraudulent statements with particularity, *i.e.* "the who, what, where, and when of such statements."); *Ariannejad v. JPMorgan Chase Bank, N.A.*, No. 09-1971, 2009 U.S. Dist. LEXIS 107357, at *9-*10 (S.D. Cal. Nov. 17, 2009) (dismissing claim under § 17500 where the plaintiff failed to plead with particularity the allegedly misleading statements made by defendants).

Despite acknowledgment of the necessity of pleading a false statement, Plaintiff's first theory fails to grasp that purchasing a keyword, without more, is no representation of fact at all. Rather, purchasing keywords is just purchasing an audience (whoever has searched for that keyword), not representing anything to it.[3] In pre-Internet terms, it is no different than Coca-Cola paying a television network for its ads to be run during a specific program or during a specific time period, or paying for its print ads to be run in a particular magazine. A decision to focus advertising on a specific cross-section or class of consumers that an advertiser determines to be desirable based on some identifiable criteria is a bedrock principle underlying literally all advertising—from print, to television, to new media. A ruling that an advertiser could not purchase certain keywords associated with groups of consumers it wants to target (like consumers interested in tours and similar local activities in San Francisco) would be tantamount to ruling that Coca-Cola could not purchase keyword or billboard advertisements targeted at consumers of

---

[3] Groupon does not dispute that the actual advertisements themselves may contain representations of fact that are the proper subject of a separate analysis for false advertising purposes, just as the statements Coca-Cola may place in its ad copy may be analyzed for potentially misleading content. But this analysis of content is distinct from merely purchasing a place for that advertising content.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

other beverages like iced tea simply because Coke is not iced tea; or that Rolex could not advertise in *Cigar Aficionado* magazine, because a watch is not a cigar.

Not surprisingly, the only court to have addressed allegations that the purchase of keywords alone can be false or misleading has flatly rejected that possibility. *See FTC v. Cantkier*, 2011 WL 742647 at *4. *Cantkier* dealt with claims brought under the FTC Act for allegedly false Internet advertising relating to Federal Government loan programs. Even broader than the statutes at issue in this action, the FTC Act allows claims for unfair and deceptive practices based on "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and that (3), the representation, omission, or practice is material." *Id*. The primary alleged misrepresentation at issue in *Cantkier* was that the defendant's business was affiliated with the Federal Government. *Id*. at *7.

Looking to the complaint, the *Cantkier* court found that there were sufficient allegations that misrepresentations were made about government affiliation to survive a motion to dismiss. *Id*. That said, when the court confronted the issue of keyword advertising in isolation, it strongly sided with the defendant, holding that its purchase of keywords on Google such as "financial stability.gov," "fha.com," "financialsecurity.gov," "www.makinghomeaffordable.gov," and "makinghomeaffordable.gov" could not, on its own constitute a violation of the FTC Act—even though those keywords all connoted government involvement. *Id*. at *7 n.11 ("Defendant argued that bidding on search engine keywords is an insufficient basis to establish liability under Section 5. The Court agrees that the allegation of bidding on particular keywords per se would not be a deceptive act or practice."). It was only the fact that alleged misrepresentations were made in the ads' content themselves that gave rise to a potential claims, not the keyword purchases. *Id.*

Here, just as in *Cantkier*, Groupon's purchase of keywords, apart from the content of any advertisements, cannot constitute false advertising or unfair competition. By purchasing keywords such as "San Francisco tours" or "Napa wine tours," Groupon is choosing to focus its advertisement on a class of consumers that have searched for those terms, based on a belief that such consumers may be interested in what Groupon offers deals on. It is not making any representation of fact at all, let alone an untrue or misleading one.

Fenwick & West LLP
Attorneys at Law
San Francisco

A rule prohibiting purchases of keywords regardless of the content of the ad placed would also run afoul of the First Amendment's protections of commercial free speech. While the First Amendment does allow limitation on false or misleading commercial speech, *see Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976), it does not tolerate restrictions on truthful advertisements without the significant showing that the regulating authority has a "substantial interest" in restricting the speech at issue and that the regulation is crafted so that any "interference with speech [is] in proportion to the interest served." *See. e.g., Peel v. Attorney Registration & Disciplinary Commission*, 496 U.S. 91, 100 (1990) (rejecting as overbroad a state categorical ban on lawyer advertisements noting a claim of specialty). Where a regulation bars a large segment of advertising, as would a ban on purchasing keywords not being sold, it can effectuate an excessive ban on free speech. *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 564-65 (2001) (in striking down a ban on certain outdoor advertising of tobacco products, the Court recognized that "a retailer in Massachusetts may have no means of communicating to passersby on the street that it sells tobacco products because alternative forms of advertisement, like newspapers, do not allow that retailer to propose an instant transaction in the way that onsite advertising does").

Plaintiff's first theory seeks to bar even truthful ads targeted to certain designated classes of consumers—those who have expressed an interest in tours and other tourist activities. In seeking to prohibit Groupon's purchase of keywords relating to tours, Plaintiff demands an application of the Lanham Act and California's UCL that would countenance an unsupportable ban on a crucial segment of advertising on the Internet. Plaintiff's complaint fails to justify this significant intrusion into Groupon's (and other advertisers') protected speech—especially where Plaintiff can and is litigating whether the ads themselves are misleading on their own account. The Supreme Court has consistently rejected attempts to so thoroughly restrict lawful speech, including advertising targeted as particular classes of consumers. *See, e.g., Shapero v. Kentucky Bar Association*, 486 U.S. 466, 478-80 (1988) (rejecting attempt to bar attorneys from sending targeted direct-mail solicitations to persons known to be in need of legal services under the commercial speech doctrine because less burdensome means to policing undue influence existed);

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*see also Lorillard Tobacco*, 533 U.S. at 566 (rejecting Massachusetts law barring certain outdoor tobacco advertising, including advertisements within 1000 feet of a school, because, despite a compelling interest in stopping the sale of tobacco to children, the regulation was not sufficiently tailored to meet this end).

Courts frequently dismiss causes of action or strike individual theories plead in support of a cause of action where that theory is legally deficient, in order to eliminate issues that should not be included in the litigation. *See, e.g., See, e.g., Architectural Mailboxes,* No. 10-974, 2011 U.S. Dist. LEXIS 46180, at *18; *Burch*, 2010 U.S. Dist. LEXIS 23659, at *5 n.1; *Camplaie*, 706 F. Supp. 2d at 1055. As Plaintiff's theory that Groupon's purchase of keywords can constitute false or misleading advertising is not actionable, Plaintiff's First, Second, and Third Causes of Action should be dismissed or struck to the extent they rely on that theory. Any amended complaint should be limited to theories that the content of advertising, not the mere purchase of keywords used to help identify recipients of the advertising, is allegedly misleading.

Likewise, Plaintiff's request for an injunction barring Groupon from purchasing certain keyword advertising must be struck. Plaintiff cannot obtain an injunction barring conduct that is itself entirely lawful. *See, e.g., United Transportation Union v. State Bar of Michigan*, 401 U.S. 576, 584 (1971) ("An injunction can issue only after the plaintiff has established that the conduct sought to be enjoined is illegal . . . ."). As this remedy is not lawfully available and would violate the First Amendment, Plaintiff's claims must be dismissed to the extent that they seek such a remedy. *See Whittlestone, Inc.*, 618 F.3d at 971; *see also Johnson*, 2007 U.S. Dist. LEXIS 40176, at *19-*21; *Bureerong*, 922 F. Supp. at 1479 n.34.

## III. PLAINTIFF'S CLASS ALLEGATIONS ARE NOT COGNIZABLE AND SHOULD BE STRUCK

Moreover, given that Plaintiff cannot premise any cause of action on Groupon's purchase of keywords alone, its putative class is not cognizable and should be struck. Plaintiff defines its putative nationwide class in this action as:

> "All persons and entities in the United States who purchased internet ads with Google for the purposes of advertising local tour company business information and whose tour businesses,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

> including the cost of advertising on Google, have been affected by the false advertisements of Groupon which claim to provide discounted offers for tours, but actually provide no such offers."

FAC ¶ 7. Without a blanket claim that purchase of keywords, per se, can support a cause of action, Plaintiff's complaint is left only with its theory that Groupon's individual ads' content is false or misleading. Given the completely disparate individual issues that would be presented in such a context by the substantial differences in the individual ads at issue in relation to the deals offered by Groupon (*see* Webb Decl. Exhs. A-J); the differences in the putative class members' businesses, advertising practices, and expenditures; differences in locales; and concomitant differences in legal issues, there is nothing approaching the requisite commonality or typicality to support a viable class action. *See* Fed. R. Civ. P. 23(a)(2)-(3). *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508-09 (9th Cir. 1992); *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 152 (N.D. Cal. 1991). Moreover, from Plaintiff's allegations (*see* FAC ¶ 11), it would appear that it is aiming to certify a class under Rule 23(b)(3), which would further require Plaintiff to demonstrate that common issue of law and fact *predominate* over any individual issues. Fed. R. Civ. P. 23(b)(3).

To be sure, the class certification determination is generally made after resolution of the pleadings. But in a case like this, where it is clear at the outset that no viable class exists, the court may strike class action allegations prior to any motion for class certification. *See Vinole v. Yoder*, 571 F.3d 935, 940 (9th Cir. 2009) (recognizing viability of early challenge to class action, prior to class certification and denying class certification where individual issues would predominate); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) (striking class allegations made in relation to claims arising from alleged misrepresentations by Apple prior to class certification where it was clear that individual issues related to each transaction would overbear common issues). Courts have also recognized that individual issues relating to the alleged misleading nature of advertisements are often a barrier to false advertising class actions. *See, e.g., Konik v. Time Warner Cable*, No. 07-763, 2010 U.S. Dist. LEXIS 136923, at *24-*29 (C.D. Cal. Nov. 24, 2010) (typicality failed for proposed UCL class where individual

circumstances were necessary to determine whether promotional statements regarding television service were false or misleading).   This is only made more true where, as here, there are myriad advertisements being made by Groupon on any given day, corresponding to different deals that by definition vary across different locales.  *See, e.g.*, Webb Decl. Exhs. A-J; FAC ¶ 6.  Moreover, the difference in the ads is not the end of the story.  With disparate deals and ads in different locales as the starting point, Plaintiff would also have to contend with individual issues of alleged cost increases for different tour companies and other unspecified "affects" to their differing businesses across the proposed nationwide class.   The idea that a class could be appropriate under these circumstances is inconceivable, and Plaintiff's class allegations therefore should be struck now.

## IV.   THE FAC FAILS TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

In addition to premising its first three claims on a legally flawed keyword theory, the FAC also fails to plead any continuing economic relationships as necessary to support Plaintiff's Fourth Cause of Action for Interference with Prospective Economic Advantage.  As such, that cause of action must also be dismissed.

Under California law, to state a claim for intentional interference with prospective economic advantage, a plaintiff is required to plead (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts apart from the interference itself, designed to disrupt the relationship; (4) actual disruption of the relationship; (5) economic harm to the plaintiff proximately cause by the acts of defendant.  *See, e.g., Blank v. Kirwan*, 39 Cal. 3d 311, 330-31 (Cal. 1985).  Additionally, Plaintiff is required to plead and prove that such actions were "independently wrongful," that is, wrongful acts that are independent from the purported interference.  *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.,* 479 F.3d 1099, 1108 (9th Cir. 2006) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (Cal. 2003)).

Plaintiff's Fourth Cause of Action entirely fails to plead this first element.  Instead of pointing to actual customers or economic relationships which were allegedly interfered with,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Plaintiff claims only that it "has enjoyed a longstanding and successful relationship with users of Google searches" and that it has "an established track record of converting into customers many of those users who search Google using terms such as 'San Francisco Tours' or 'Napa Wine Tours.'" FAC ¶ 70. This is akin to suggesting that a merchant has a continuing economic relationship with any potential customer, or that an advertiser has a continuing economic relationship with everyone who has ever received an advertisement, merely because the merchant successfully obtained customers in the past. The courts have consistently and repeatedly rejected claims for "interference" with a general class of potential customers.

In pleading the existence of a continuing economic relationship, a plaintiff must allege more than "a class of unknown potential future customers," rather, an actual continuing economic relationship has to be identified. *See, e.g.*, *Swingless Golf Club Corp. v. Taylor*, No. 08-5574, 2009 U.S. Dist. LEXIS 57654, at *11-*12 (N.D. Cal. July 7, 2009). Indeed, the courts have consistently rejected attempts by plaintiffs to plead interference claims based on such "speculative expectancies." *See, e.g., Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522, 528 (Cal. Ct. App. 1996) (rejecting theory that a defendant had intentionally interfered with the market for plaintiff's property as a whole because "the class of all potential buyers" was too speculative to meet the standard and requiring the plaintiff to point to an actual "prospective buyer which was reasonably likely to produce a future beneficial sale of its property.")

On facts very similar to Plaintiff's allegations here, this Court has rejected Plaintiff's line of reasoning, holding that the mere possibility of diversion, even of *repeat* website customers, by allegedly false keyword advertising is insufficient to establish anything but an unprotectable hope of future customers. *See Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. 03-5340, 2005 U.S. Dist. LEXIS 6228, at *38-*41 (N.D. Cal. Mar. 30, 2005). There, the plaintiff had alleged that Google intentionally interfered with potential repeat customers to plaintiff's website through the practice of selling the plaintiff's trademark as a keyword, diverting such customers from plaintiff's site to a competitor's when they attempted to find plaintiff's site later, and that this constituted intentional interference with prospective economic advantage. *Id*. at *36 n.31.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   The Court held that while the plaintiff "has alleged relationships with 'repeat customers' who

2   'probabl[y]' will 'continue to seek to visit' its Web site and purchase its goods and services" its

3   "alleged expectation of 'future and prospective sales' to these customers . . . is too speculative to

4   support this claim." *Id*. at *39-*40. Accordingly, the court dismissed the plaintiff's claim under

5   Rule 12(b)(6).

6   Here, Plaintiff's claims are even more speculative. As noted above, Plaintiff alleges

7   nothing more than a hope of converting potential customers into actual customers through its

8   website and advertising. Plaintiff has not even pled that Groupon's ads—which Plaintiff claims

9   are misleading because Groupon does *not* offer the tours that Plaintiff sells—have ever diverted

10  *any* prior customer from using Plaintiff again. As recognized by the court in *Am. Blind &*

11  *Wallpaper Factory*, the hope of finding a potential customer is not the type of relationship that the

12  law protects. As such, Plaintiff's Fourth Cause of Action should be dismissed without leave to

13  amend.

14  **V.    THE COURT SHOULD DISMISS OR STRIKE PLAINTIFF'S REQUEST FOR
           DISGORGEMENT OF PROFITS UNDER SECTION 17200**

15

16  Finally, Plaintiff's Third Cause of Action for unfair competition and false advertising, in

17  violation of Cal Bus. & Prof. Code. § 17200 ("UCL"), improperly seeks a non-restitutionary

18  award of Groupon's profits which is unavailable as a matter of law. As such, that request must be

19  dismissed or struck.

20  The remedies available under California's UCL are limited to restitution and injunctive

21  relief. *See Korea Supply*, 29 Cal. 4th at 1144. Accordingly, neither compensatory damages nor

22  disgorgement are available. *Id.* ("[w]hile the scope of conduct covered by the UCL is broad, its

23  remedies are limited. A UCL action is equitable in nature; damages cannot be recovered.");

24  *Brothers v. Hewlett-Packard Co.*, No. 06-2254, 2006 U.S. Dist. LEXIS 82027, at *27 (N.D. Cal.

25  Oct. 31, 2006) (following *Korea Supply* and holding that plaintiffs are not entitled to

26  "nonrestitutionary disgorgement of profits under the UCL."). These same limitations apply

27  regardless of whether a case is or is not a class action. *See, e.g., Madrid v. Perot Systems Corp.*,

28  130 Cal. App. 4th 440, 461 (Cal. Ct. App. 2005) (holding that use of a fluid recovery fund in a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

class action cannot expand the remedies available to include a nonrestitutionary award of a defendant's profits).

Restitution, within the meaning of California's UCL, refers only to "the return of property or funds in which the plaintiff has an ownership interest." *See, e.g., id.* at 453. As such, "the California Supreme Court has defined a UCL order for restitution as one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" *Id.* (quoting *Korea Supply*, 29 Cal. 4th at 1144-45). Accordingly, disgorgement of profits is only available under California's UCL where it is restitutionary in nature—that is, where it constitutes the return of money taken from the plaintiff through a wrongful scheme that was either in plaintiff's possession or to which plaintiff had a vested interest. *Id.* at 460; *Henry v. Lehman Commercial Paper, Inc.*, 471 F.3d 977, 996 (9th Cir. 2006) ("[i]n the context of the UCL, 'restitution' is meant to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest, and is so limited"). Disgorgement is not available where it simply constitutes a measure of the defendant's gain from the challenged conduct, as the Plaintiff seeks here. *See, e.g.*, *Madrid*, 130 Cal. App. 4th at 455-56 (rejecting argument that restitutionary disgorgement under California's UCL should be measured by the defendant's unlawful gains as opposed to monies actually received from plaintiff, and further rejecting claim that a plaintiff could recover disgorgement of funds paid to a UCL defendant from third parties); *Henry*, 471 F.3d at 997-98 (affirming district court ruling rejecting claim to disgorgement of profits measured by defendant's gain as opposed to any monies actually paid by the plaintiff to the defendant, and characterizing such relief as unavailable "nonrestitutionary disgorgement"); *Henderson v. Gruma Corp.*, No. 10-4173, 2011 U.S. Dist. LEXIS 41077, at *23-*24 (C.D. Cal. Apr. 11, 2011) (striking claim for "nonrestitutionary disgorgement" as impermissible under the UCL in a putative class action where the plaintiff sought "*all* monies, revenues, and profits obtained by means of any wrongful act or practice").

Accordingly, while "*restitutionary* disgorgement" is theoretically available under the UCL, Plaintiff's request for "any and all profits" that Groupon received as a result of its allegedly

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    wrongful advertising is certainly not.  FAC ¶ 68.  Plaintiff does not and cannot allege that it paid

2    any sum of money to Groupon, nor that Groupon otherwise obtained any property that Plaintiff

3    had a vested interest in.  Plaintiff's only allegations of lost funds or property in the FAC are (i)

4    increased advertising spending paid to Google, not to Groupon, and from which Groupon receives

5    no portion whatsoever, and (ii) lost damages from potential loss of future customers.  *Id*. ¶¶ 38,

6    40.  In neither case is Groupon receiving any funds or property to which Plaintiff either had

7    possession or any vested interest.  *See National Rural Telecommunications Co-Op v. DirectTV,*

8    *Inc.*, 319 F. Supp. 2d 1059, 1080 (C.D. Cal. 2003) (a "vested" interest for purposes of restitution

9    under the UCL is one that is "unconditional," "absolute," and "not contingent.").  Moreover, even

10   assuming that Groupon obtained profits by new customers who signed up for its deals-of-the-day,

11   these profits would not represent payments that would otherwise have gone to Plaintiffs.  Again,

12   Plaintiff's claim of wrongdoing is based on the fact that Groupon does *not* offer what Plaintiff

13   offers; thus, a customer "misled" into signing up for a Groupon deal for something other than a

14   tour is not thereby paying Groupon money that would ever conceivably be directed to Plaintiff—

15   much less in which Plaintiff had possession or a vested interest.

16         Given this, Plaintiff can legitimately claim no form of monetary relief from Groupon

17   under the UCL, and Plaintiff's request for disgorgement of all profits must be dismissed or struck

18   as legally unavailable.  *See Whittlestone, Inc.*, 618 F.3d at 971 (motion to dismiss is the

19   appropriate means to eliminate causes of action seeking legally impressible remedies); *see also*

20   *Martinez v. The Welk Group, Inc.*, No. 09-2883, 2011 U.S. Dist LEXIS 58718, at *10-*11 (S.D.

21   Cal. June 2, 2011) (striking request for all profits earned by defendant on account of unfair

22   practices as unavailable under Section 17200); *Henderson*, 2011 U.S. Dist. LEXIS 41077, at *23-

23   *24 (same); *Bran v. Sun Pacific Farming Cooperative*, No. 06-871, 2007 U.S. Dist. LEXIS

24   19235, at *17-*18 (E.D. Cal. Mar. 1, 2007) (same).

25                                    **CONCLUSION**

26         For the foregoing reasons, the Court should dismiss Plaintiff's First, Second, and Third

27   Causes of Action to the extent that they allege that Groupon's purchase of keywords is actionable;

28   strike Plaintiff's class allegations; dismiss or strike Plaintiff's request for an injunction barring

Groupon's purchase of certain keywords; dismiss Plaintiff's Fourth Cause of Action; and dismiss or strike Plaintiff's request for disgorgement of profits under California Business and Professions Code § 17200.

Dated:    June 23, 2011                    FENWICK & WEST LLP


By: */s/ Laurence F. Pulgram*
    Laurence F. Pulgram

    Attorneys for Defendant
    GROUPON, INC.